Robert Wade BROWN, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 8334.

United States Court of Appeals Tenth Circuit.

Jan. 25, 1966.

Jerry L. Hemry, Oklahoma City, Okl., for appellant.

Benjamin E. Franklin, Asst. U. S. Atty., Wichita, Kan. (Newell A. George, U. S. Atty., and Guy L. Goodwin, Asst. U. S. Atty., Wichita, Kan., with him on the brief), for appellee.

Before PICKETT, LEWIS and HILL, Circuit Judges.

PICKETT, Circuit Judge.

Brown, while confined in the United States Penitentiary at Leavenworth, Kansas, killed a fellow prisoner and was sentenced upon conviction of second-degree murder. He appeals, contending that the trial court erred in (1) admitting his confession in evidence; (2) refusing to grant a new trial because a juror failed to answer a question which would have disclosed his disqualification; and (3) refusing to permit the accused to exhibit to the jury a scar on his body.

On March 20, 1964, in the presence of a number of witnesses, and within the confines of the penitentiary, Brown fatally stabbed one Tony Freitas, another inmate. Immediately thereafter Brown was placed in disciplinary segregation, a form of solitary confinement, commonly known in prison argot as "the hole." While so confined, Brown was given small quantities of food consisting of bread, beverage and cereal. For several days he had neither mattress nor blanket; however the record indicates that "the hole" was heated.

On the day of the killing, Brown was visited by F.B.I. Agent Max Richardson, who sought to question him about the incident. The interview was immediately terminated when Brown indicated that he did not wish to discuss the matter. On the following day another interview was attempted, but Brown again refused to discuss the case. On March 25, Richardson again contacted Brown, who was then willing to give his version of what happened. He signed a statement relating the details of the stabbing, but asserted that it was done by him in self-defense. On March 27, Brown sent for Agent Richardson and advised him that his previous statement was untrue insofar as it dealt with the matter of self-defense.

When Brown's statement, as amended, was offered in evidence at the trial, its admission was objected to upon the ground that it was not voluntary, and further that it was obtained in violation of Brown's constitutional rights. Thereupon, in the absence of the jury the court conducted a hearing to make a factual determination of these issues. Conflicting testimony was adduced from Brown and F.B.I. Agent Richardson as to the circumstances surrounding the confession. The court overruled appellant's objection and admitted the confession, finding that Brown was adequately informed as to his constitutional rights and that there was no evidence of physical mistreatment or coercion which would effect the voluntary nature of the statement.

It is argued that the statement was involuntary and improperly admitted into evidence because (1) Brown was not fully advised of his constitutional right to counsel before making the statement, and (2) the statement was the product of mistreatment and coercion.

We are satisfied that the record amply supports the finding that Brown, before he answered any questions, was fully advised as to his constitutional rights, specifically his right to remain silent and his right to counsel. On each of his visits, and particularly prior to the taking of the statements of March 25 and March 27, Agent Richardson was careful to advise Brown of his identity and official position; that he was not compelled to make a statement; that if he did it could be used against him in court; and that he was entitled to consult an attorney before making a statement. Brown indicated that he understood these rights; his statement contained the declaration "I have been advised that I am not compelled to make a statement, and that I am * * * entitled to consult an attorney before making a statement." Prior to each questioning Brown

was well aware of, and was repeatedly and properly advised as to his constitutional rights, including his right to counsel, and he cannot now complain. Davidson v. United States, 10 Cir., 349 F.2d 530; Mah v. United States, 10 Cir., 348 F.2d 881.

█ In order to determine whether a confession is voluntary, it is necessary to consider the totality of circumstances surrounding its making. McHenry v. United States, 10 Cir., 308 F.2d 700, cert. denied 374 U.S. 833, 83 S.Ct. 1878, 10 L.Ed.2d 1055. Relevant criteria are the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. See Thomas v. State of Arizona, 356 U.S. 390, 78 S.Ct. 885, 2 L.Ed.2d 863, reh. denied 357 U.S. 944, 78 S.Ct. 1379, 2 L.Ed.2d 1557; Fikes v. State of Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246, reh. denied 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 561; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, reh. denied 345 U.S. 946, 73 S.Ct. 827, 97 L.Ed. 1370; Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801.

█ At the hearing to determine the admissibility of the confession, Brown asserted that his statement was the product of threat and physical deprivation. The testimony of Agent Richardson repeatedly controverted that such threats were in fact made. In considering the conflicting testimony, the trial court chose to believe the F.B.I. Agent rather than Brown.[1] Cf. Davidson v. United States, supra 349 F.2d at 534; Thomas v. State of Arizona, supra 356 U.S. at 402–403, 78 S.Ct. 885. The trial court followed the rule prevailing in the federal courts by first passing upon the admissibility of the confession after a full and fair hearing on the matter and by then submitting that issue to the jury

under appropriate instructions for its consideration in determining what credibility, if any, would be accorded it. McHenry v. United States, supra 308 F.2d at 704. From the record, we find no credible support for appellant's assertions that his confession was the product of mistreatment and intimidation. Brown was an experienced adult criminal with prior solitary confinement for a crime identical to the one charged here, and he was not subjected to any prolonged or exhaustive questioning or any physical or psychological coercion. There was ample evidence to sustain the trial court's finding that Brown, adequately advised of his rights, made his confession freely and voluntarily, and without threat, promise or coercion.

A more difficult question arises from appellant's contention that "the trial court erred in not granting appellant's motion for new trial when appraised of the probable partiality of a member of the jury hearing the trial." During voir dire inquiry by defense counsel, the prospective jurors were asked if any of them "or anyone in their immediate family" had ever been the victim of an attack upon their person. There was no response. Subsequent to the trial it developed that a brother of one of the jurors had been murdered some years prior. Brown urges that he was denied the fair trial required by due process; that the verdict was returned by a tainted jury, one of the jurors of which was prejudiced; that the juror's failure to respond to the voir dire question worked to deny defense counsel the effective use of his peremptory challenges.

█ There is no contention here that actual bias has been shown. Rather, the issue is whether the circumstances of this case compel an imputation of inherent bias to the juror as a matter of law. Certainly the voir dire oath administered to potential jurors obligates them fully to tell the truth. However, no reason appears for concluding that the juror was

---

1. The Court stated that it could not "place any credence in the statement the Defendant makes as to what was said to him while he was down in the hole at the segregation building in which he claims they—that he was threatened."

in fact not fully responsive to the actual interrogatory, which referred to the juror's "immediate family." Such a term is indeed ambiguous, for depending upon such circumstantial variables as age and marital status, it can import different meanings to different individuals. Defense counsel was free to explain to the jury what was meant by "immediate family", and could have expanded his inquiry to include "family" and "relatives", but he elected to pursue the point no further. It cannot be presumed that the juror's failure to respond to the question was not proper, and an inference of intentional or inadvertent non-disclosure is unwarranted.

Appellant urges that the decision in Consolidated Gas & Equipment Co. of America v. Carver, 10 Cir., 257 F.2d 111, is controlling authority in this case. There, in the course of voir dire examination, the court asked of the jury panel whether any of its members had been involved in a personal injury suit. A juror remained silent even though he had a case then pending in the state court for injuries similar to those sustained by the plaintiff. The effect of the juror's failure to answer the question "was to deceive and mislead the court and the litigants in respect to his competency." 257 F.2d 111, at 115. The record here does not disclose that the juror either failed to give a truthful answer to the question propounded, or conceal a known disqualification. Cf. Fritz v. Boland & Cornelius, 2 Cir., 287 F.2d 84. There is no indication here of positive non-disclosure such as took place in United States ex rel. De Vita v. McCorkle, 3 Cir., 248 F.2d 1, cert. denied 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77, reh. denied 355 U.S. 908, 78 S.Ct. 329, 2 L.Ed.2d 77, and United States ex rel. Fletcher v. Cavell, 3 Cir., 287 F.2d 792, cert. denied 366 U.S. 944, 81 S.Ct. 1672, 6 L.Ed.2d 855. Nor is this case like Photostat Corp. v. Ball, 10 Cir., 338 F.2d 783, where a judgment was vacated because of the failure of several prospective jurors to disclose information requested on voir dire examination. The question there propounded,

although apparently misunderstood by the jurors, was such as to require a disclosure of the desired information, which "was withheld through no fault of the unsuccessful litigant." There is no indication in the present case, however, that there was any question or comment which might possibly have alerted the juror to the advisability of not serving as a juror in appellant's trial. United States ex rel. Luzzi v. Banmiller, 3 Cir., 248 F.2d 303, cert. denied 355 U.S. 924, 78 S.Ct. 367, 2 L.Ed.2d 355.

Disruptive consequences to the trial of criminal cases are suggested by permitting defense counsel to come forth after conviction and successfully contend that, notwithstanding the absence of actual bias, and notwithstanding his own failure sufficiently to pursue voir dire inquiry to expose possible predilections on the part of a prospective juror, that nevertheless probable prejudice must be imputed to the juror as a matter of law and a new trial thereafter granted. "A disqualification which by reasonable diligence could have been discovered before verdict, may not afterwards be made the subject of an attack upon a verdict." Spivey v. United States, 5 Cir., 109 F.2d 181, 186, cert. denied 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401.

Therefore, in the absence of any non-disclosure, intentional or inadvertent, from which it can be conclusively presumed that there was so obvious a disqualification and inherent prejudice as a matter of law, Frazier v. United States, 335 U.S. 497, 513, 69 S.Ct. 201, 93 L.Ed. 187, reh. denied 336 U.S. 907, 69 S.Ct. 488, 93 L.Ed. 1072, we hold that the action of the court below in denying the motion for new trial was not a clear abuse of discretion.

And finally, it is urged that the trial court erred in not allowing the appellant to exhibit to the jury a scar on his body. Such physical exhibits are proper only where it is shown that they are relevant to the case. Brown did not testify, and no proper foundation was laid for

the showing of the scar. 22A C.J.S. Criminal Law § 716b; State v. Wendler, 83 Idaho 213, 360 P.2d 697. The request to exhibit the scar was properly denied.

Affirmed.